Case No. 26-0302

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

---

IN RE: CUYAHOGA COUNTY, OH,
*Defendant-Petitioner*,

v.

ALANNA DUNN, REGINALD HAYMON, ADAM DAY, ERIC ZEIDER,
CAMERON LEONARD, AND JASON WILSON,
individually and on behalf of all others similarly situated,
*Plaintiffs-Respondents*

---

ON PETITION FOR PERMISSION TO APPEAL FROM THE
UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO
THE HONORABLE BRIDGEN MEEHAN BRENNAN
CASE NO. 1:23-CV-00364-BMB

---

**PLAINTIFFS-RESPONDENTS' ANSWER
IN OPPOSITION TO RULE 23(F) PETITION TO APPEAL
FROM ORDER GRANTING CLASS CERTIFICATION**

---

Drew Legando
MERRIMAN LEGANDO
WILLIAMS & KLANG, LLC
1360 West 9th Street, Suite 200
Cleveland, Ohio 44113
(216) 522-9000
drew@merrimanlegal.com

Janet Herold
JUSTICE CATALYST LAW
40 Rector Street, Floor 9
New York, New York 10006
jherold@justicecatalyst.org

*Counsel for Plaintiffs-Respondents*

Kate Schwartz
Caryn Lederer
Emily Brown
HUGHES SOCOL PIERS RESNICK & DYM LTD.
70 W. Madison Street, Suite 4000
Chicago, Illinois 60602
(312) 580-0100
kschwartz@hsplegal.com
clederer@hsplegal.com
ebrown@hsplegal.com
(518) 732-6703

Akeeb Dami Animashaun
355 South Grand Avenue, Suite 2450
Los Angeles, California 90071
(929) 266-3971
dami@animashaun.me

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: 26-0302                    Case Name: In re: Cuyahoga County, Ohio

Name of counsel: Kate Schwartz

Pursuant to 6th Cir. R. 26.1, Alana Dunn
                              *Name of Party*

makes the following disclosure:

1.    Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

No.

2.    Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If yes, list the identity of such corporation and the nature of the financial interest:

No.

CERTIFICATE OF SERVICE

I certify that on _____ April 24, 2026 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/ Kate Schwartz

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

6CA-1
8/08                                                                    Page 1 of 2

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: 26-0302          Case Name: In re: Cuyahoga County, Ohio

Name of counsel: Kate Schwartz

Pursuant to 6th Cir. R. 26.1, Reginald Haymon
*Name of Party*
makes the following disclosure:

1.      Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

No.

2.      Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If yes, list the identity of such corporation and the nature of the financial interest:

No.

CERTIFICATE OF SERVICE

I certify that on _____April 24, 2026_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/ Kate Schwartz

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

6CA-1
8/08                                                                                      Page 1 of 2

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: 26-0302 _____          Case Name: In re: Cuyahoga County, Ohio _____

Name of counsel:  Kate Schwartz _____

Pursuant to 6th Cir. R. 26.1,  Adam Day _____
                                                    *Name of Party*

makes the following disclosure:

1.      Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

No.

2.      Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If yes, list the identity of such corporation and the nature of the financial interest:

No.

CERTIFICATE OF SERVICE

I certify that on _____April 24, 2026_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/ Kate Schwartz _____

_____

_____

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

6CA-1
8/08                                                                                                        Page 1 of  2

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations
# and Financial Interest

Sixth Circuit
Case Number:  26-0302             Case Name:  In re: Cuyahoga County, Ohio

Name of counsel:  Kate Schwartz

Pursuant to 6th Cir. R. 26.1,  Eric Zeider
                                          *Name of Party*

makes the following disclosure:

1.      Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

No.

2.      Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If yes, list the identity of such corporation and the nature of the financial interest:

No.

CERTIFICATE OF SERVICE

I certify that on _____April 24, 2026_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/ Kate Schwartz

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

6CA-1
8/08                                                                                                  Page 1 of  2

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: 26-0302            Case Name: In re: Cuyahoga County, Ohio

Name of counsel: Kate Schwartz

Pursuant to 6th Cir. R. 26.1, Cameron Leonard
                              *Name of Party*

makes the following disclosure:

1.      Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

No.

2.      Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If yes, list the identity of such corporation and the nature of the financial interest:

No.

CERTIFICATE OF SERVICE

I certify that on _____April 24, 2026_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/ Kate Schwartz

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

6CA-1
8/08                                                                    Page 1 of 2

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations
# and Financial Interest

Sixth Circuit
Case Number: 26-0302          Case Name: In re: Cuyahoga County, Ohio

Name of counsel:  Kate Schwartz

Pursuant to 6th Cir. R. 26.1, Jason Wilson
*Name of Party*

makes the following disclosure:

1.  Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

No.

2.  Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If yes, list the identity of such corporation and the nature of the financial interest:

No.

CERTIFICATE OF SERVICE

I certify that on _____April 24, 2026_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/ Kate Schwartz

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES.................................................................................... iii

INTRODUCTION ...............................................................................................1

FACTUAL BACKGROUND ...............................................................................1

    A.    General Background.................................................................................1

    B.    Plaintiffs' Evidence in Support of Class Certification ..........................2

PROCEDURAL BACKGROUND........................................................................7

LEGAL STANDARD ..........................................................................................8

ARGUMENT .......................................................................................................8

    I.    The County is Unlikely to Succeed on the Merits of an Appeal...............9

        A.    The District Court Thoroughly Analyzed and Correctly Applied Class Certification Precedent Concerning Monell and Overdetention...........9

        B.    The County's Arguments Mischaracterize Relevant Precedent and the Court's Reasoned Application of It and Do Not Show an Abuse of Discretion ...............................................................................................13

        C.    The County's Assertion that Plaintiffs' Claims are Not Typical Misrepresents the Record and Improperly Injects Merits Issues ........18

    II.    The Remaining *Delta Air Lines* Factors Do Not Support Interlocutory Review ....................................................................................................20

CONCLUSION...................................................................................................23

CERTIFICATE OF COMPLIANCE ...................................................................24

CERTIFICATE OF SERVICE ............................................................................25

i

EXHIBIT 1:   Rule 23(f) Order in *In re: Louisville-Jefferson County (Healy)*, Case No. 21-0501

# TABLE OF AUTHORITIES

**Pages**

## Cases

*Driver v. Marion County Sheriff*,
859 F.3d 489 (7th Cir. 2017).......................................................................*passim*

*Grote v. Kenton County, Kentucky,*
85 F. 4th 397 (6th Cir. 2023) ..................................................................15

*Harper v. Sheriff of Cook County*,
581 F.3d 511 (7th Cir. 2009).......................................................................*passim*

*Healey v. Louisville Metro Government*,
No. 3:17-CV-00071-RGJ-RSE, 2021 WL 149859 (W.D. Ky. Jan. 15, 2021)
 .................................................................................................................*passim*

*In re Delta Air Lines*,
310 F.3d 953 (6th Cir. 2002)......................................................................*passim*

*In re Humana, Inc.*,
163 F.4th 376 (6th Cir. 2025) ................................................................. 21, 22

*Portis v. City of Chicago*,
613 F.3d 702 (7th Cir. 2010).......................................................................*passim*

*Rhoades v. Tilley,*
No. 21-5899, 2022 WL 684576 (6th Cir. Mar. 8, 2022).......................................15

*Tardiff v. Knox County*,
365 F.3d 1 (1st Cir. 2004) ....................................................................10

*West v. Tillman*,
496 F.3d 1321 (11th Cir. 2007)................................................................. 15, 17

iii

*Woodall v. Wayne County, Michigan*,
   No. 20-1705, 2021 WL 5298537 (6th Cir. Nov. 15, 2021) .......................... *passim*

**Rules**

Fed. R. Civ. P. 23 ..............................................................................................21

Fed. R. Civ. P. 23(a) .................................................................................. 8, 9, 20

Fed. R. Civ. P. 23(b)(3) .............................................................................. 8, 9, 20

Fed. R. Civ. P. 23(f) ................................................................................... *passim*

## INTRODUCTION[1]

The District Court properly certified a class of pretrial detainees who were overdetained for more than 18 hours after the basis for their detention ended due to systemically deficient release processes applicable to all detainees. It faithfully applied existing precedent—including *Healey*, *Harper*, *Portis,* and *Driver*—consistent with this Court's guidance in *Woodall* concerning certification of *Monell* claims, and it correctly found that the County's "limited" and "few" examples of individualized release issues did not defeat certification. As in *Healey*, the petition for interlocutory review should be denied.

## FACTUAL BACKGROUND

### A.  General Background

In 2019, the Cuyahoga County Sheriff's Department ("CCSD") began housing Cleveland arrestees as part of a revenue generating agreement (*see* Contract, R. 45-1). Almost immediately, Cleveland began sending CCSD officials monthly "Held Beyond Release" Reports ("OD Reports"), which warned of overdetentions by identifying pretrial detainees who the Cuyahoga County Jail (the "Jail") failed to release on the day they became eligible. (Scafidi Dep., R. 45-2, PageID#448–450)

---

[1] Plaintiffs cite the County's Petition, Document 1-2, as "Pet." and the District Court's Class Certification Opinion, R. 77, as "Op." Pincites to the Petition refer to the blue page number stamped at the top of the document.

Though Cleveland continued sending CCSD the OD Reports for *over four years*, until May 2023 (*id.* at PageID#404), CCSD never engaged a consultant or specialist to remedy overdetentions. (Henry Dep., R. 45-10, PageID#1002–1003, 1026) Nor did CCSD remedy them itself: between October 2020 and January 2022, the Warden instructed subordinates to prepare a corrective "plan" or "measures" to remedy the "release problem" three separate times, but none materialized. (*Id.* at PageID#1007–1008; Henry Emails, R. 45-24–26, PageID#1608–1614) Instead, systemic deficiencies in CCSD's release policies and practices persisted for years, unabated, causing the named Plaintiffs and hundreds of other pretrial detainees to be held for more than 18 hours after they became entitled to release. (*See* Animashaun Dec., R. 45-4, Exs. A, C, D)

**B.  Plaintiffs' Evidence in Support of Class Certification**

*First*, Plaintiffs presented extensive evidence that CCSD's release policies and practices are systemically and unconstitutionally deficient. (*See* Ps' Class Cert. Memo., R. 45, PageID#323–330) CCSD uses a manual release process during which release records must change hands numerous times after staff retrieve the records from either a queue or an email group. (D's RFA Resp., R. 45-9, PageID#940, ¶ 95; Henry Dep., R. 45-10, PageID#979; Cage Dep., R. 45-13, PageID#1182; Jaenke Dep., R. 45-5, PageID#725–726, 765) This manual process is prone to known errors, such as staff failing to identify or process release dispositions (Boardman Dep., R.

2

45-14, PageID#1183, 1187), overlooking or accidentally deleting release emails (Palagyi Dep., R. 45-6, PageID#821; Brewer Dep., R. 45-11, PageID#1071), and misplacing or failing to distribute printed release records (Brewer Dep., R. 45-11, PageID#1087–1088).[2]

CCSD cannot identify when these or other errors cause its manual process to stall because it does not track the status of releases in progress. (Jaenke Dep., R. 45-5, PageID#767) Staff are not even expected to confirm that a release record they sent for further processing was received or acted upon. (*Id.* at PageID#764–765; Boll Dep. 1, R. 45-12, PageID#1141, 1159; Boll Dep. 2, R. 45-19, PageID#1551)

CCSD also has not implemented any process checks to prevent or timely identify and remedy known errors. (*E.g.*, Henry Dep., R. 45-10, PageID#1036; Brewer Dep., R. 45-11, PageID#1071; Palagyi Dep., R. 45-6, PageID#823, 829–831, 834; Jaenke Dep., R. 45-5, PageID#758–759, 764) Critically, CCSD has no periodic fail-safe procedures to ensure it has *received* and *processed* all release records. (*E.g.* Palagyi Dep., R. 45-6, PageID#826, 831; D's RFA Resp., R. 45-9, PageID#939–940, ¶¶ 89–90; Henry Dep., R. 45-10, PageID#1035; Boardman Dep., R. 45-14, PageID#1254; Cage Dep., R. 45-13, PageID#1184, 1214–1215; Jaenke

---

[2] These examples are not exhaustive. (*See* Ps' Class Cert. Memo., R. 45, PageID#327–328)

Dep., R. 45-5, PageID#758–759; Brewer Dep., R. 45-11, PageID#1072; Boardman Dep., R. 45-14, PageID#1273)

Since CCSD lacks basic safeguards over its manual release process, it often only belatedly discovers its own errors and overdetentions when it is notified by third parties, like detainees' attorneys or family. (*See* Jaenke Dep., R. 45-5, PageID#719–721; Palagyi Dep., R. 45-6, PageID#826, 830–831, 834) These systemic process deficiencies are exacerbated by CCSD's reliance on third parties (the Cleveland Clerk of Court ("COC") and private monitoring companies) who have no duty to provide critical release notifications. (D's Rog. Resp., R. 45-15, PageID#1317–1318, Rogs. 21–22; Henry Dep., R. 45-10, PageID#1039) (*See also* Ps' Class Cert. Memo., R. 45, PageID#325–326) These failures are further compounded by CCSD's release policies being deficient or non-existent. (*See id.* at PageID#326–327)

**Second**, Plaintiffs presented robust evidence that CCSD's systemically inadequate release policies and procedures caused the overdetention of all detainees in the certified class. CCSD's Warden testified that in circumstances applicable here, CCSD "hope[s] it wouldn't take more than six hours" to effectuate a detainee's release. (Henry Dep., R. 45-10, PageID#973) This testimony is corroborated by the analysis of Plaintiffs' data expert, who found that most relevant detainees were released within six hours after they became entitled to release. (Keller Supp. Report,

4

R. 45-29, PageID#1755–1757, 1764–1767; Keller Report, R. 45-30, PageID#1788, 1802–1803)

Discovery revealed that detainees who are not released within 18 hours—*three times* longer than it should, and typically does, take—are held for that excessive duration due to errors caused by CCSD's systemically deficient processes. Most notably, Defendant produced two types of documents that detail the *County's own findings* about the causes of overdetentions that occurred during the Class Period: (1) CCSD Bond Report Emails, in which CCSD Records Supervisor Palagyi explained why individuals who posted bond the prior business day were not released (Animashaun Dec., R. 45-4, PageID#477), and (2) CCSD OD Report Analyses, which Palagyi prepared and provided to CCSD leadership explaining why CCSD did not release detainees the day they were entitled to release. (*Id.* at PageID#477, 481)

Explanations provided in the CCSD Bond Report Emails evidence that the County's systemically inadequate processes caused the overdetentions. (*Id.* at PageID#478, 488–556) Reasons stated for the delayed releases included, for example: the "jail neglected to process these last night;" the detainee "posted bail after our cut off time so I will have our staff process that now;" and the "clerk who was printing it from the queue . . . did not pass it on to the release desk." (*Id.* at PageID#479)

5

Explanations provided in the CCSD OD Report Analyses likewise evidence that the County's systemically inadequate procedures caused the overdetentions. They reflect that detainees were overdetained for reasons such as: the CCSD Jailer failing to process their release; CCSD staff failing to locate their release paperwork after it was sent to an email group; CCSD failing to complete a minor misdemeanor plea form for a charge that the Cleveland COC identified as a minor misdemeanor; CCSD failing to tell the Cleveland COC that the detainee needed a personal bond issued once their contempt charges (which the Cleveland COC had identified as being personal bond eligible) were the only charges left pending; and CCSD not being notified of GPS monitor installations by the third-party installation companies that CCSD relied on to provide notice despite failing to furnish them with adequate instructions and protocols. (*Id.* at PageID#482–486, 565–675) Dozens of people were overdetained for each of these reasons, which are exemplary, but not exhaustive, of the ways in which the CCSD OD Report Analyses show that CCSD's deficient policies and practices caused overdetentions. (*Id.*)

The County offered five purported examples of how the extensive delays at issue can be due to "valid, individualized reasons" (D's Class Cert. Resp., R. 49, PageID#2014), but three of those examples were inapt (*e.g.* pertained strictly to detainees with holds excluded from the class definition) or purely speculative (*e.g.* unsupported by evidence of any specific release being delayed for the hypothetical

6

reason provided). (*See* Ps' Class Cert. Reply, R. 51, PageID#2577–2578) For its fourth example (the need to clarify release records), the County cited a handful of releases, but records show CCSD's deliberate indifference caused those releases to be delayed. (*Id.* at PageID#2578–2579) Ultimately, the record provides only one legitimate example of a release being delayed because of an individualized issue— specifically, detainee Tyrica Duff refusing to leave the Jail. (*Id.* at PageID#2580; Animashaun Dec., Ex. D, R. 45-4, PageID#635) The District Court found that, in attempting to overcome extensive evidence of systemic deficiencies causing overdetentions, the County identified only "limited" and "few" examples of individualized issues. (Op. at PageID#3678, 3685)

## PROCEDURAL BACKGROUND

On March 31, 2026, the District Court granted Plaintiffs' Motion for Class Certification. (Pet., Ex. 1) It found each Plaintiff was overdetained for more than 18 hours after the "legal basis for their detention ended" (Op. at PageID#3690) and that Plaintiffs showed overdetentions longer than 18 hours "could reasonably be attributed to the systemic issues they challenge" which "applied to every detainee[.]" (Op. at PageID#3686)

In addition, the District Court modified Plaintiffs' proposed class definition by increasing the release time criterion from 12 hours to 18 hours[3] and by adding the cause of overdetention (*i.e.* "because of the County's failure to implement and maintain an adequate process for timely releasing detained inmates"). (*Id.* at PageID#3679–3680) Discovery closed before the ruling, and the parties fully briefed the County's motion for summary judgment (*see* SJ Memos., R. 66-67, 71), which remains pending.

## LEGAL STANDARD

Interlocutory appeals under Rule 23(f) are "never to be routine." *In re Delta Air Lines*, 310 F.3d 953, 959 (6th Cir. 2002). In deciding requests for review, this Court considers: (1) whether a case "raises . . . novel or unsettled question[s]"; (2) whether the certification ruling sounds the litigation's "death-knell"; (3) the petitioner's "likelihood of . . . success on the merits"; and (4) "the posture of the case as it is pending before the district court." *Id.* at 960.

## ARGUMENT

The County asserts that all four Rule 23(f) factors support interlocutory review and, in claiming it is likely to succeed on the merits, argues the District Court abused its discretion in applying every Rule 23(a) and Rule 23(b)(3) factor except

---

[3] This means class members may not seek damages for detention occurring before 18 hours after entitlement to release.

numerosity. The County's kitchen-sink approach underscores that this is a routine petition lacking any compelling basis for interlocutory review.

## I.    The County is Unlikely to Succeed on the Merits of an Appeal

The majority of the County's petition rehashes arguments it unsuccessfully raised in the lower court, contending that the District Court misapplied the legal standard for nearly every class certification requirement. (*See* Pet. at 14–25) When considering a Rule 23(f) request for routine error correction, this Court "remember[s] that the standard of review is whether the district court committed an abuse of discretion," a "deferential standard . . . support[ing] the notion that Rule 23(f) appeals will be the exception, not the norm." *In re Delta Air Lines*, 310 F.3d at 960.  The County identifies no such abuse.

### A.  The District Court Thoroughly Analyzed and Correctly Applied Class Certification Precedent Concerning *Monell* and Overdetention

The County advances two principal arguments that the District Court abused its discretion in applying Rule 23(a) and Rule 23(b)(3). First, it contends that the District Court misapplied this Court's precedent governing class certification of *Monell* claims, particularly *Woodall v. Wayne County, Michigan*, No. 20-1705, 2021 WL 5298537 (6th Cir. Nov. 15, 2021). (*See* Pet. at 9, 19–23) Second, it argues that the District Court disregarded two Seventh Circuit decisions—*Harper v. Sheriff of Cook County*, 581 F.3d 511 (7th Cir. 2009), and *Portis v. City of Chicago*, 613 F.3d

9

702 (7th Cir. 2010)—which held that the overdetention claims at issue there could not proceed as class actions. (*See* Pet. at 8, 16–19) Both arguments are meritless.

***First***, the District Court carefully analyzed *Woodall*, correctly applied it to the facts of this case, and properly concluded that Plaintiffs' *Monell* claims fall within the category of claims *Woodall* recognized as appropriate for class certification. (*See* Op. at PageID#3672–3676, 3679, 3686)

In *Woodall* the plaintiffs sought class certification of a claim challenging a jail's custom of, among other things, permitting strip searches in the presence of male officers, even though the jail's policy "expressly prohibit[ed]" such conduct. *Woodall*, 2021 WL 5298537, at *1–2. This Court vacated the district court's class certification order, concluding that individual issues predominated. *Id.* at *2, *5–7. Central to that holding was the district court's reliance on *Tardiff v. Knox County*, 365 F.3d 1 (1st Cir. 2004), which this Court found distinguishable. *Woodall*, 2021 WL 5298537, at *7. Unlike *Tardiff*, which challenged a "blanket strip search policy," the *Woodall* plaintiffs attacked a practice that that was expressly forbidden. *Id.* at *4, *7. As this Court explained, for the *Monell* claims to proceed classwide, "[p]laintiffs would have to show that Wayne County's policy was unconstitutional for *all* inmates who have been strip searched. But the policy prohibited such conduct." *Id.* at *4 (emphasis added). By contrast, "[i]f there was such a blanket strip search policy" applicable to all inmates, predominance would be satisfied because the policy "could

10

be expected to be the proximate cause of the challenged searches. And, if the blanket policy was found constitutional, the class claims would fail together." *Id.* at \*7.

After analyzing *Woodall* (Op. at PageID#3672–3676), the District Court applied that framework and correctly concluded that Plaintiffs' claims fit squarely within it, because the systemic deficiencies they identified affected all detainees:

> Plaintiffs challenge the County's release policy—a policy that applies to every detainee. Plaintiffs' claim does not, like the claim in *Woodall*, relate to the release of each individual detainee and whether that release was constitutionally unreasonable. That is, the class claim does not suggest the County's policy was generally constitutional but sometimes violated by untimely releases. Instead, Plaintiffs allege the policy as a whole is deficient. Further, Plaintiffs have presented evidence that if a detainee was over-detained by longer than 18 hours, their detention could reasonably be attributed to the systemic issues they challenge. In this way, the release policy that applied to every detainee 'could be expected to be the proximate cause' of a detainee's over-detention if they were over-detained for longer than 18 hours.

(Op. at PageID#3686)

**Second**, the District Court did not "disregard[]" *Portis* and *Harper*. (Pet. at 8) Rather, it relied on *Healey v. Louisville Metro Government*, No. 3:17-CV-00071-RGJ-RSE, 2021 WL 149859 (W.D. Ky. Jan. 15, 2021), which carefully analyzed those two decisions along with *Driver v. Marion County Sheriff*, 859 F.3d 489 (7th Cir. 2017)—the Seventh Circuit's most recent decision addressing certification of overdetention classes (and one which the County largely ignores). (*See, e.g.*, Op. at PageID#3668–3672, 3676–3680) Based on analysis of those and other cases (*see id.*

11

at PageID#3670 n.4), *Healey* concluded overdetention classes are certifiable where plaintiffs plausibly allege a systemic defect in the municipality's release procedures that affects all detainees (as *Woodall* later held) and identify a point at which that systemic failure—rather than individual circumstances—becomes the predominant cause of overdetentions. *See* 2021 WL 149859, at *16–17.

*Driver* confirms this. There, the Seventh Circuit held that the trial court erred in denying an overdetention class on grounds that "individual variables could complicate the timing of the release." *Driver*, 859 F.3d at 491–492. The court found that the evidence in the record showed that "the average time period to effect such a release is 2–4 hours in counties in general, and up to 6 hours if problems are encountered, but even if we doubled those times, release still would be accomplished within 12 hours." *Id.* It reasoned that denial of certification was improper because "*[a]t some point . . . there is no reason to believe that individual issues would account for that delay*." *Id.* at 492 (emphasis added).

The *Driver* court easily distinguished *Portis* and *Harper* on these grounds. It observed that the *Harper* plaintiffs failed to challenge any "specific [unconstitutional] procedures" and that without any alleged "overriding policy or practice causing the delay," the constitutionality of each delay was an individualized determination. *Driver*, 859 F.3d at 492. Similarly, the *Portis* court rejected certification because the plaintiffs did not tie overdetention to a systemic defect, but

12

instead relied solely on an "arbitrary inflexible time period," asserting that detainees should have been released within two hours without evidence of when individualized factors no longer accounted for the delays. *Id.* Ultimately, *Driver* concluded that "[n]either *Portis* nor *Harper* preclude class certification in a case . . . in which the plaintiffs assert that the defendants' policy or practice caused them to be detained for an unconstitutionally-unreasonable length of time." *Id.*

The District Court applied these settled principles—principles this Court has already endorsed in holding that the *Healey* district court did not abuse its discretion by analyzing and applying *Portis*, *Harper*, and *Driver*. *See* Ex. 1 (Order Denying *Healey* Ds' Rule 23(f) Petition). It concluded that class treatment was warranted here because Plaintiffs demonstrated that detention extending beyond 18 hours after an individual became entitled to release was substantially likely to be caused by systemic deficiencies rather than individualized circumstances. (*See* Op. at PageID#3679, 3686, 3692)

### B. The County's Arguments Mischaracterize Relevant Precedent and the Court's Reasoned Application of It and Do Not Show an Abuse of Discretion

The District Court did not abuse its discretion in applying this Court's decision in *Woodall* and the well-reasoned analyses in *Healey* and *Driver*, which confirm that this case is readily distinguishable from *Portis* and *Harper*. The County's arguments

13

to the contrary mischaracterize the District Court's opinion and the precedent on which it relied and are meritless.

The County first argues that the need for each class member to prove an underlying constitutional violation is "fatal" to certifying an over-detention class because "the Seventh Circuit explained in *Harper* [that] the question of whether the timing of a release violates due process involves a highly individualized inquiry[.]" (Pet. at 17) Not so. The County conspicuously ignores both *Healey* and *Driver*—neither of which it cites in this section—as well as the District Court's factual findings. Consistent with *Woodall*, *Driver*, and *Healey*, the District Court found that Plaintiffs identified systemic deficiencies in the County's release process affecting all detainees, which "'could be expected to be the proximate cause' of a detainee's over-detention if they were over-detained for longer than 18 hours."[4] (Op. at PageID#3686)

Based on the evidentiary record, the District Court concluded that "the deliberate indifference claims presented here are subject to common resolution," because the *Monell* elements can be adjudicated on a class-wide basis. (*Id.*) The

---

[4] The District Court did not reason that "a constitutional violation may be presumed if it takes longer than 18 hours to release a detainee," as the County claims. (Pet. at 17) Rather, it appropriately concluded a jury could find that systemic deficiencies in the County's release procedures caused overdetentions lasting longer than 18 hours.

14

District Court explained that a factfinder could "decide whether the County was on notice of the inadequacy of its policies in 2021" (*id.* at PageID#3686–3687), determine whether the systemic deficiencies applicable to all class members constituted deliberate indifference (*id.* at PageID#3687), and determine causation because "Plaintiffs have presented evidence that if a detainee was over-detained for longer than 18 hours, their detention could reasonably be attributed to the systemic issues they challenge." (*Id.* at PageID#3686)

Offering no analysis whatsoever, the County relatedly insinuates that *Monell* claims cannot be litigated on a classwide basis because each overdetention allegedly requires proof of a particular release "clerk's actual knowledge [that the detainee was entitled to release] and intent." (Pet. at 18) Aside from being insufficiently developed, that argument is wrong. Unlike the cases cited, Plaintiffs do not bring individual-capacity claims against jail officers. *See West v. Tillman*, 496 F.3d 1321, 1326 n.7 (11th Cir. 2007) (explaining that the court's analysis did not apply to the plaintiff's "official capacity"—or *Monell*—claims); *Rhoades v. Tilley*, No. 21-5899, 2022 WL 684576, at *2 (6th Cir. Mar. 8, 2022) (noting defendants were sued only in their individual capacities). Accordingly, any individual clerk's "actual knowledge and intent" is irrelevant here. *See Grote v. Kenton Cnty., Kentucky*, 85 F.4th 397, 414 (6th Cir. 2023) (holding that municipal liability may attach "even if no individual officer violated the Constitution [but] where constitutional harm has nonetheless

15

'been inflicted upon the victim' and the municipality is responsible for that harm" (citation omitted)). That conclusion follows directly from Plaintiffs' allegations that the County failed to implement basic checks and fail-safes to ensure timely processing of releases—one of the systemic deficiencies common to all class members.

Second, the County's argument that the District Court "fail[ed] to explain how each class member can show that a specific policy was the actual cause of each alleged constitutional deprivation" simply repackages its first argument and fails for the same reason. (Pet. at 19) The District Court expressly found that Plaintiffs' and class members' claims rise and fall together because all class members were detained for more than 18 hours after becoming entitled to release, and the evidentiary record showed that the systemic deficiencies Plaintiffs identified—not individualized circumstances—were likely the cause of detentions beyond that point. (Op. at PageID#3686)

The County further argues that the District Court erred in finding *Woodall* distinguishable "because the Plaintiffs in this case are not alleging a *per se* challenge to the constitutionality of any specific policy." (Pet. at 19) That argument rests on a false distinction between a *per se* policy and one that affects *all* detainees. The District Court's finding that, "Plaintiffs challenge . . . a policy that *applies to every detainee*" (Op. at PageID#3686 (emphasis added)) is precisely the type of claim this

16

Court recognized as appropriate for class treatment. *See Woodall*, 2021 WL 5298537, at *4 (for *Monell* class to proceed "Plaintiffs would have to show that [the County's] policy was unconstitutional for *all* inmates" (emphasis added)). The District Court did not abuse its discretion in applying *Woodall*.

The County's last argument concerning causation, that the District Court failed to "identify any specific policy that was the 'overriding' cause of the delays experienced by each and every class member" (Pet. at 21), is incorrect. The County itself acknowledges that the class definition is grounded in "five (5) 'systemic' practices that were allegedly 'inadequate.'" (*Id.*) Rather than enumerate each deficiency in the class definition, the District Court reasonably exercised its discretion to define the class by reference to the operative policy failure: the County's "failure to implement and maintain an adequate process for timely releasing detained inmates." (Op. at PageID#3695) This Court approved a similar definition in *Healey*. *See* Ex. 1 at PageID#2174–2175. The District Court therefore acted within its discretion.

Next, the County incorrectly argues that the District Court erred in finding ascertainability satisfied because "the factfinder must determine whether a jail official 'subjectively knew' of the release-triggering event and acted with deliberate indifference." (Pet. at 23 (citing *West*, 496 F.3d at 1327)) As discussed, *West* is inapposite because Plaintiffs bring no individual-capacity claims and what any

17

individual officer "subjectively knew" about each overdetention is irrelevant. *See supra* pages 15–16.

Finally, in arguing that commonality is not satisfied because "the Plaintiff must present evidence to prove that the policy applies to *all* class members," the County does not even contend that Plaintiffs failed to make such a showing. (Pet. at 23 (emphasis in original)) It cannot. The District Court expressly found that Plaintiffs challenge a "policy that applies to every detainee." (Op. at PageID#3686)

### C. The County's Assertion that Plaintiffs' Claims are Not Typical Misrepresents the Record and Improperly Injects Merits Issues

The County's argument that the District Court abused its discretion in finding that Plaintiffs are typical rests on a misrepresentation of the record and an improper attempt to inject undeveloped merits issues into the Rule 23 analysis. (Pet. at 24–25)

The County initially contends that three Plaintiffs' claims are atypical because they were released "within hours of when the County received *actual notice* that they were entitled to release." (Pet. at 24 (emphasis added)) This is a knowing misrepresentation. The District Court found that each Plaintiff was typical because "[e]ach named Plaintiff was detained for longer than 18 hours after the *legal basis for their detention ended*." (Op. at PageID#3690 (emphasis added))[5] The end of the

---

[5] Plaintiffs showed that each named Plaintiff was detained for periods ranging from over 18 hours to over 41 hours after the legal basis for their detention ended. (*See* Ps' Class Cert. Memo., R. 45, PageID#331–332)

legal basis for detention is the critical time under Plaintiffs' theory, not when the jail received "actual notice" of entitlement to release. That distinction is central to this case because Plaintiffs showed that a core deficiency is the County's failure to maintain an adequate system for *receiving* and processing release-triggering information, including its reliance on third parties to provide such information despite those entities having no duty to do so. (*See* P's Class Cert. Memo., R. 45, PageID#325–326, 334) The County's attempt to reframe that systemic failure as a typicality defect improperly repackages a disputed merits defense and fails to demonstrate clear error. *See In re Delta Air Lines*, 310 F.3d at 960 ("The Rule 23(f) appeal should not become a vehicle for early review of a legal theory that underlies the merits of a class action.").

The County next argues that four named Plaintiffs are atypical because they received jail-time credit for periods of overdetention. (Pet. at 24) This argument fails for several reasons. To begin, the County offered no analysis explaining how the receipt of jail-time credit defeats typicality. (*See* D's Class Cert. Resp., R. 49, PageID#2017 (making conclusory assertion that typicality was not satisfied because Plaintiffs received jail-time credit, without analysis)) A court cannot abuse its discretion by rejecting an undeveloped argument. In any event, jail-time credit does not render Plaintiffs atypical because it affects a substantial portion of the class: the County's own records show that more than 30,000 detainees received jail-time credit

19

during the class period. (*See* Ps' Class Cert. Reply, R. 51, PageID#2583, n.8.) Further, the argument also improperly injects a merits defense—and is wrong. The County cites no authority for the proposition that a completed substantive due-process violation—its failure to timely release a detainee after entitlement—can be cured by a separate entity (the courts), sometimes years later, awarding credit for time served. That issue is now squarely before the District Court on summary judgment. (*See* Ps' SJ Resp., R. 67, PageID#3238) It would be improper for this Court to resolve this undeveloped merits issue on interlocutory review of a class certification decision.

## II.    The Remaining *Delta Air Lines* Factors Do Not Support Interlocutory Review

In addition to arguing that the District Court erroneously applied almost all of the Rule 23(a) and Rule 23(b)(3) requirements, the County also argues that that the remaining *Delta Air Lines* factors all favor interlocutory review. None of those arguments are persuasive.

*First*, the County asserts—without elaboration—that "if this case is permitted to proceed to trial as a class action, it will cause the County to incur significant costs." (Pet. at 25) That conclusory claim carries no weight. The "discussion of this factor must go beyond a general assertion." *In re Delta Air Lines*, 310 F.3d at 960. The County does precisely what this Court forbids: it fails to provide "the court insight into potential expenses and liabilities" it might incur if the petition is denied.

20

*Id.*; *see also In re Humana, Inc.*, 163 F.4th 376, 384 (6th Cir. 2025) (holding "death-knell" factor was not satisfied even where defendants claimed that plaintiffs sought "hundreds of millions of dollars in damages" because defendant "provide[d] no indication of its own net worth or assets").

Equally unpersuasive is the County's reliance on *Healey*, where it claims the defendant was required to "spend[] over five additional years in litigation" after this Court denied interlocutory review. (Pet. at 26) In *Healey*, dispositive motions were not due until over three years after class certification. *See Healey*, No. 3:17-cv-00071-RGJ-RSE (W.D. Ky. Dec 11, 2023), ECF 149. Here, by contrast, summary judgment is fully briefed, so the County "still may [very soon] evade liability entirely if its motion for summary judgment is granted. Thus, the death-knell factor does not support an immediate appeal." *In re Humana, Inc.*, 163 F.4th at 384.

***Second***, the County argues that interlocutory review is warranted because the appeal presents novel and unsettled questions. (Pet. at 27) Not so. The novelty of a claim "weigh[s] more heavily in favor of review when the question is of relevance not only in the litigation before the court, but also to class litigation in general." *In re Delta Air Lines*, 310 F.3d at 960 (citation omitted). The County has not even attempted to show that the issues it raises have broader applicability to class action litigation. Nor can it. This Court has already spoken definitively on how Rule 23 applies to *Monell* claims in *Woodall*. The court below found *Healey* persuasive

21

"largely because that reasoning is consistent with . . . *Woodall*." (Op. at PageID#3679) It further explained that Plaintiffs' claims fall squarely within the category of cases *Woodall* deemed appropriate for class treatment. (Op. at PageID#3686)

The County contends its petition should be granted  because "there [is] no Sixth Circuit precedent directly on point" and because *Healey* allegedly "conflicts with the Seventh District's [sic] opinions in *Portis* and *Harper*[.]" (Pet. at 27-28) The former contention fails because the absence of a factually identical Sixth Circuit decision is not a basis for review; this Court has expressly warned that granting petitions simply to apply "well-established standards to the facts of a particular case" would overwhelm it. *In re Delta Air Lines*, 310 F.3d at 959–60. The latter contention is false. Neither *Healey* nor the District Court's decision conflicts with *Portis* or *Harper*. Reading *Portis* and *Harper* together with *Driver*, these Seventh Circuit class overdetention cases confirm that the type of class certified here is proper. *See* Ex. 1 at PageID#2174–2175.

***Third***, the County argues that the procedural posture favors granting the petition even though summary judgment is fully briefed and a ruling in the County's favor would eliminate any need for Rule 23(f) review altogether. *See In re Humana, Inc.*, 163 F.4th at 384. To avoid that inescapable conclusion, the County suggests that the District Court has effectively ruled against it on the merits already, merely

22

because it held that "a factfinder can decide [predominating issues]." (Pet. at 28) Far from resolving the merits, the District Court did only what Rule 23 requires: it identified predominating issues capable of classwide resolution. (Op. at PageID#3686–3687) It may still conclude that those issues present no triable issues of fact and grant summary judgment. If it does, the need for interlocutory review evaporates entirely.

## CONCLUSION

For the foregoing reasons, this Court should deny the County's Petition.

Respectfully submitted,
/s/ *Kate Schwartz*

Drew Legando
MERRIMAN LEGANDO
WILLIAMS & KLANG, LLC
1360 West 9th Street, Suite 200
Cleveland, Ohio 44113
(216) 522-9000
drew@merrimanlegal.com

Janet Herold
JUSTICE CATALYST LAW
40 Rector Street, Floor 9
New York, New York 10006
(518) 732-6703
jherold@justicecatalyst.org

Kate Schwartz
Caryn Lederer
Emily Brown
HUGHES SOCOL PIERS RESNICK
& DYM LTD.
70 W. Madison Street, Suite 4000
Chicago, Illinois 60602
(312) 580-0100
kschwartz@hsplegal.com
clederer@hsplegal.com
ebrown@hsplegal.com

Akeeb Dami Animashaun
355 South Grand Avenue, Suite 2450
Los Angeles, California 90071
(929) 266-3971
dami@animashaun.me

*Counsel for Plaintiffs-Respondents*

23

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Fed. R. App. P. 32(g)(1), I hereby certify that the foregoing Answer in Opposition to Rule 23(f) Petition to Appeal complies with:

1. The word limit set forth in Fed. R. App. 5(c)(1), because it contains **5,192 words**, excluding the cover page, corporate disclosure statements, table of contents, table of authorities, signature block, certificate of compliance, and certificate of service; and

2. The typeface requirements set forth in Fed. R. App. P. 32(a)(5) and the type style requirements set forth in Fed. R. App. P. 32(a)(6), because it has been prepared in **Times New Roman type style 14-point font** in Microsoft Word.


By:    /s/ *Kate Schwartz*
        Kate Schwartz

*Counsel for Plaintiffs-Respondents*

24

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 24, 2026, the foregoing Answer in Opposition to Rule 23(f) Petition to Appeal was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following counsel of record:

Stephen W. Funk
ROETZEL & ANDRESS, LPA
222 South Main Street
Akron, Ohio 44308

Brendan D. Healy
Jake A. Elliott
Assistant Prosecuting Attorneys
Cuyahoga County Prosecutor's Office
1200 Ontario Street, 8th Floor
Cleveland, Ohio 44113